## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

June 26, 2020

Via ECF

The Honorable Loretta A. Preska,
   United States District for the Southern District of New York,
      500 Pearl Street,
         New York, NY 10007.

         Re:    *Petersen Energía Inversora S.A.U.* v. *Argentine Republic, and YPF S.A.*, No. 15 Civ. 2739 (LAP) ("*Petersen*"); *Eton Park Capital Management, L.P. et al.* v. *Argentine Republic and YPF S.A.*, No. 16 Civ. 8569 (LAP) ("*Eton Park*")

Dear Judge Preska:

         On behalf of Defendant the Argentine Republic ("Argentina" or the "Republic"), we write to advise the Court on the status of our meet and confer discussions with Plaintiffs over next steps in this litigation. Regrettably, the parties have a fundamental disagreement about the next steps and respectfully request the Court's guidance. During our discussions, Plaintiffs did not put forward any specific proposal, let alone a schedule for doing so. Instead, Plaintiffs have opposed Defendants'[1] proposal, which, as discussed below, seeks to prioritize expert discovery and the resolution of threshold issues of foreign law. We have conferred with counsel for YPF, and YPF is in agreement with the proposal presented below.

### Introduction

         This case concerns what rights Plaintiffs have under Argentine law as a result of the Republic's acquisition of shares owned by nonparty Repsol, S.A. ("Repsol"). In May 2012, the Republic's Congress—acting pursuant to its National Constitution and a statute (Law No. 21,499) that authorizes expropriations—enacted Law No. 26,741, which declared Repsol's 51% stake in YPF to be in the public interest and subject to expropriation. The Executive Branch effected the appropriation acting under that authority. Plaintiffs claim that they had a right under YPF's bylaws to a tender offer and now seek damages because one was not conducted. But even if Plaintiffs were correct—

---

[1] "Defendants" refers to the Republic and YPF S.A.

The Honorable Loretta A. Preska                                                                                          -2-

and Defendants dispute that as a matter of governing Argentine law—the bylaws provided for specific remedies for failure to conduct any such tender offer (including disallowing the votes of the wrongly acquired shares). Through this action, Plaintiffs seek a damages windfall they are not entitled to under the bylaws or Argentine law.

This Court has now confirmed that it will hear the merits of this dispute. Defendants believe that the most logical path forward is for the parties to first conduct expert discovery on threshold foreign law issues and have those issues resolved by the Court on motions for summary judgment (or alternatively, at a short trial focused on those issues at which the Court can hear from and question the experts) before proceeding to fact discovery. This Court has correctly recognized that the resolution of these actions will require "making conclusions of Argentine law." *Petersen Energía Inversora S.A.U.* v. *Argentine Republic, and YPF S.A.*, 2020 WL 3034824, at *13 (S.D.N.Y. June 5, 2020) ("*Petersen III*"); *id.* at *12 ("Based on its review of the parties' expert submissions, the Court concludes that Plaintiffs' claims are 'corporate' claims as a matter of Argentine law"); *Petersen Energía Inversora, S.A.U.* v. *Argentine Republic, and YPF S.A.*, 2016 WL 4735367, at *13 (S.D.N.Y. Sept. 9, 2016) ("*Petersen I*") (finding that "the internal affairs doctrine directs application of Argentine law" to Plaintiffs' claims).

Most, if not all, of these threshold issues of Argentine law are dispositive of these actions. *See, e.g.*, *Petersen III*, 2020 WL 3034824, at *9 ("choos[ing] not to reach the issue" of whether Plaintiffs' claims would be barred by a limitations period under Argentine law).

Proceeding to fact discovery before resolving these threshold issues of law will be a waste of resources—of the parties and the Court—if Plaintiffs' claims are defective as a matter of Argentine law. The efficiency gains of Defendants' proposed approach are magnified by the global pandemic, which is getting worse in Argentina and will be exacerbated by the imminent onset of winter and the flu season in the Republic. Instead of beginning fact discovery during a period when it is inevitable that document collection and similar discovery processes will be slowed down by the pandemic, our proposed approach would allow the Court to address core issues in the case in the most expeditious fashion.

**The Dispositive Questions of Argentine Law That Must Be Adjudicated**

The Court concluded, on the record before it on Defendants' motion to dismiss for *forum non conveniens* ("FNC"), that "[a]ll agree that Argentine law applies to this action." *Petersen III,* 2020 WL 3034824, at *13. And "to the extent that [complicated questions of Argentine law] do arise, the high quality of the parties' expert submissions on Argentine law gives the Court confidence that similar future submissions will provide the Court with a more than adequate basis to inform itself and reach a decision on any potentially thorny issues." *Id.* Thus, Defendants propose that the most efficient path

The Honorable Loretta A. Preska                                                                                      -3-

forward is for the parties to make such expert submissions in furtherance of an anticipated summary judgment motion to resolve threshold (and in Defendants' view, dispositive) issues of Argentine corporate, constitutional, and public law, including, but not limited to, the following:

- whether Plaintiffs' claims are barred by the three-month limitation period or other requirements governing decisions made at shareholders' meetings under Article 251 of Argentina's General Corporations Law (*see Petersen III*, 2020 WL 3034824, at *11; Manóvil Decl. ¶ 36; *Petersen* ECF No. 116 ("Cabanellas Decl.") ¶¶ 18, 22(ii)(1); Manóvil Reply Decl. ¶ 54; *Petersen* ECF No. 153 ("Cabanellas Reply Decl.") ¶ 21);

- whether a shareholder has standing under the Argentine General Corporations Law, or any other provision of Argentine law, to bring claims against another shareholder for alleged violations of corporate bylaws (*see* Manóvil Decl. ¶¶ 15-18, 42; Manóvil Reply Decl. ¶ 43);

- whether Argentine law recognizes a guarantor theory of liability to impose obligations on YPF beyond those expressly articulated in the bylaws (*see* Cabanellas Decl. ¶¶ 22(i)(1), 22(v)(1); Cabanellas Reply Decl. ¶ 33);

- whether Argentine law allows a claim for damages, given that Section 7(h) of YPF's bylaws does not provide for such a remedy (*see* Manóvil Decl. ¶ 42; Manóvil Reply Decl. ¶¶ 43-57); and

- whether Defendants can be held liable for the non-performance of a tender offer, in light of Laws Nos. 26,741 and 21,499, and Argentine constitutional and public law (*see Petersen* ECF No. 117 ("Santiago Decl.") ¶ 26); Cabanellas Decl. ¶¶ 20-21, 22(iii)(1), 22(v)(1)).

Each of these issues is dispositive of Plaintiffs' claims. Even if Plaintiffs' claims are not dismissed entirely, the resolution of these issues may determine the shape and scope of discovery.

The fact that questions of foreign law go directly to Plaintiffs' standing is a compelling reason why those issues should be resolved first. *See In re Facebook, Inc., IPO Deriv. Litig.*, 797 F.3d 148, 157-58 (2d Cir. 2015) (affirming dismissal where plaintiffs failed to adequately plead contemporaneous stock ownership and holding that it was "a proper exercise of judicial power—and good craft" for the district court to first resolve questions of shareholder standing); *see also Ozdemir* v. *Somerset Med. Ctr.*, 2007 WL 1988731, at *2 (N.D.N.Y. July 3, 2007) ("the interests of justice and judicial economy favor a phased approach to discovery, with the parties first addressing the threshold issue

The Honorable Loretta A. Preska                                                                                                -4-

of plaintiff's standing, and later, if the suit goes forward, the merits of plaintiff's claims"). Defendants previously sought to raise certain of these issues on a Rule 12 motion—as discussed during the Court conference last July (*see Petersen* ECF Nos. 86, 87)—but this Court guided the parties to first resolving whether Plaintiffs' claims should be dismissed for FNC and ordered "all other deadlines and proceedings" in these actions "held in abeyance pending the resolution of the FNC Motions." (*Petersen* ECF No. 106; *Eton Park*, ECF No. 46.)

### The Court Should Order Expert Discovery Necessary To Resolve Threshold, Dispositive Issues of Foreign Law

In the interests of judicial efficiency, we respectfully urge the Court to order the parties to conduct expert discovery on threshold, potentially dispositive issues of foreign law and then resolve those issues before undertaking a lengthy and expensive fact discovery process.[2] This Court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El* v. *Britton*, 523 U.S. 574, 598 (1998); *see also Exovir, Inc*. v. *Dr. Mandel*, 1996 WL 101269, at *1 (S.D.N.Y. Mar. 7, 1996) (Peck, J.) ("[t]here is no rule of discovery priority under the Federal Rules of Civil Procedure").

Courts regularly sequence discovery to allow for the resolution of dispositive, threshold issues before undertaking additional discovery that may prove to be a waste of the parties' and the Court's resources. *See Nationwide Sales & Servs. Inc*. v. *Envirocare Techs. Int'l, Ltd*., 2018 WL 2436969, at *8 (E.D.N.Y. May 30, 2018) (noting that a "phased discovery plan" created "efficiencies for the benefit of the parties" by prioritizing matters that are "critical to the dispute"); *United States ex rel. Hussain* v. *CDM Smith, Inc.*, 2019 WL 1428360, at *4 (S.D.N.Y. Mar. 29, 2019) (employing bifurcated discovery process, with initial phase limited to "threshold issues essential to [plaintiff's]

---

[2] The Court may choose to resolve the relevant issues of foreign law either through (i) briefing and a hearing on motions for summary judgment, *see Itar–Tass Russian News Agency* v. *Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998) ("The [d]etermination of a foreign country's law is an issue of law."); *see also Korea Life Ins. Co.* v. *Morgan Guar. Tr. Co. of New York*, 269 F. Supp. 2d 424, 439 (S.D.N.Y. 2003) (Hellerstein, J.) ("A disagreement of the experts as to an issue of foreign law does not foreclose the granting of a motion for summary judgment."), or (ii) a bifurcated trial under Rule 42, *Callahan* v. *U.S. Filter, Inc.*, 2005 WL 61498, at *1 (W.D.N.Y. Jan. 11, 2005) (bifurcating affirmative defense and explaining "bifurcation would promote judicial economy and efficiency because if the defendant succeeds in the affirmative defense, what is expected to be a lengthy presentation of evidence . . . on damages and economic harm suffered by plaintiff, would not be necessary").

The Honorable Loretta A. Preska                                                                                                -5-

claims"); *see also Fischer & Mandell, LLP* v. *Citibank, N.A.*, 632 F.3d 793, 797 (2d Cir. 2011) (preemption is a "threshold issue"); *Gibson* v. *Grenier*, 2009 WL 3644133, at *1 (E.D.N.Y. Oct. 27, 2009) (Block, J.) (limitations period is a "threshold issue"). For example, in *Pippins* v. *KPMG LLP*, Judge McMahon ordered a two-phase discovery process "with an eye to having someone . . . move for summary judgment." 2012 WL 19379, at *15 (S.D.N.Y. Jan. 3, 2012). The court thus directed that the parties conduct "expedited" discovery limited to a threshold issue as part of the first stage of discovery. *Id.* A similar approach makes good sense here.[3]

Plaintiffs have stated that they will oppose this phased approach on the theory that it "unfairly" focuses on Defendants' case. But Plaintiffs' case depends entirely on prevailing on these issues of Argentine law, and Defendants' approach would allow both Defendants and Plaintiffs to bring threshold, and potentially dispositive, issues before the Court on a reasonably expedited basis. It is in no one's interest to waste the parties' and the Court's resources during a fact discovery process that may ultimately prove unnecessary if, as Defendants expect will be the case, the Court correctly concludes that, for example, Plaintiffs lack standing, their claims are barred by a limitation period, or no claim for damages is available under governing Argentine law.[4]

---

[3] Courts also regularly hear oral testimony from experts on foreign law, and allow depositions of those experts, where helpful in resolving significant threshold issues. *See, e.g.*, *Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 153 F.3d 82, 86 (2d Cir. 1998) (noting that court heard from experts on foreign law); *Norwest Fin., Inc.* v. *Fernandez*, 86 F. Supp. 2d 212, 227 (S.D.N.Y. 2000) ("Norwest offered the testimony of Dr. Ruben Segal, who has practiced law in Argentina for almost 40 years and taught law in Argentina for more than 20."), *aff'd*, 225 F.3d 646 (2d Cir. 2000); *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 2003 WL 1484269, at *1 (S.D.N.Y. Mar. 21, 2003) (Fox, J.) (allowing deposition of experts on Russian law where plaintiff alleged that its majority stake in an oil company was seized); *Base Metal Trading S.A.* v. *Russian Aluminum*, 2002 WL 987257, at *4 (S.D.N.Y. May 14, 2002) (Maas, J.) (permitting the deposition of foreign law expert to resolve threshold issues on which parties had "sharply differing views"); *see also Kashef* v. *BNP Paribas SA*, 2017 WL 2633580, at *2 (S.D.N.Y. June 15, 2017) (Nathan, J.) ("[T]he deposition or testimony of a foreign law expert may be warranted if this case proceeds to discovery or trial.").

[4] *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 506 F. Supp. 762, 796-97 (E.D.N.Y. 1980) (Pratt, J.) ("[T]he court believes that early resolution of this potentially dispositive issue [the 'government contract defense'] will serve the interests of justice and judicial efficiency . . . . [T]his is especially true in this case where any other procedure adopted might subject the parties to years of discovery and trial only to have later

The Honorable Loretta A. Preska                                                                                          -6-

        Nor would Defendants' approach materially delay these proceedings. Defendants expect that the Argentine law issues can be presented in a motion filed before the end of the year. And Plaintiffs' assertion that Defendants are merely seeking to delay is baseless. To the contrary, Defendants asked for leave to raise these issues by way of Rule 12(b)(6) and 12(c) motions last year, but the Court proposed resolving the FNC issues first. (*See supra* p. 4.) While many of these issues could be resolved by further motion practice on the pleadings, Defendants are answering the Eton Park complaint (rather than moving to dismiss) and are proposing to comprehensively resolve the potentially dispositive foreign-law issues all at once by conducting expert discovery and any necessary hearing on foreign law at this time.

        Indeed, Plaintiffs themselves advocated for a bifurcated approach last July—urging the Court to resolve issues of liability before damages. (*See Petersen* ECF No. 85.) There is no reason why an analogous sequencing of issues would be somehow materially prejudicial to them now.

        Plaintiffs pretend there will be no or minimal fact discovery here. While that may be true for Plaintiffs' case, it is not for Defendants'. In the event Defendants' anticipated motion for summary judgment on the threshold, dispositive foreign law issues is denied, Defendants will be taking discovery into facts highly relevant to their defenses, such as (i) the reasons for Plaintiffs' failure to challenge the relevant YPF shareholders' resolution allowing Argentina to vote the Repsol shares or pursue legal remedies available to them at that time, including Argentine court proceedings; (ii) in the case of Petersen, indemnification rights from Repsol that would have eliminated (or greatly diminished) the damages it has claimed here; and (iii) the circumstances surrounding the agreement with Prospect Investments LLC—a company wholly owned by Burford Capital LLC.

        Indeed, fact discovery will be especially burdensome and costly here because virtually all of the potentially relevant documents are located in Argentina or Spain (where Petersen has entered into bankruptcy proceedings and Repsol, YPF's majority shareholder prior to the expropriation, is headquartered) and are in Spanish. (*See* Etchegorry Decl. ¶ 20.) In addition, the events at issue occurred years ago—YPF's bylaws were drafted in 1993 and Law No. 26,741 was passed more than eight years ago—meaning that many relevant documents may exist only in paper form. (*Id.* ¶¶ 21-22.) Testimony of non-party witnesses, such as former government officials or former employees of the

---

generations of judges, lawyers, and litigants discover that an early trial of the government contract defense might have preempted the need for almost all of the discovery undertaken and saved thousands of person-hours and millions of dollars associated with those unnecessary efforts.").

The Honorable Loretta A. Preska                                                                             -7-

parties, will likely need to be obtained by Hague Convention or similar process and will require translation.  (*See id.* ¶ 12.)

As a practical matter, the ongoing lockdown in Argentina due to the pandemic, and the unforeseeable timing of a subsequent recovery, will undoubtedly complicate and slow down discovery, both by personnel in Argentina and by lawyers in the United States seeking to coordinate such efforts without being able to travel to those jurisdictions.  *See Argentina extends lockdown in Buenos Aires as coronavirus cases surpass 20,000*, Reuters (June 4, 2020), https://www.reuters.com/article/us-health-coronavirus-argentina/argentina-extends-lockdown-in-buenos-aires-as-coronavirus-cases-surpass-20000-idUSKBN23B3II; *Argentina tightens Buenos Aires lockdown as coronavirus cases surge*, Reuters (June 26, 2020), https://www.reuters.com/article/us-health-coronavirus-argentina/argentina-tightens-buenos-aires-lockdown-as-coronavirus-cases-surge-idUSKBN23X2QB.  While there may be challenges in deposing expert witnesses, those will be a fraction of the difficulties in gathering years-old documents and deposing, and preparing for deposition, fact witnesses (particularly nonparties).

In sum, early determination of the key foreign law issues, which can be resolved based on expert testimony alone, will serve the interests of efficiency.  Even if they do not dispose of the case in its entirety—and Defendants submit that they will—clarifying those issues may lead to an early resolution of the case as a whole.  Therefore, the Court should sequence discovery by ordering the parties to first conduct expert discovery on threshold, dispositive issues of foreign law.  Should the Court agree, Defendants propose the following schedule:

- Opening Expert Reports:  August 21, 2020

- Rebuttal Expert Reports:  October 9, 2020

- Close of Expert Discovery:  November 13, 2020

- Motion(s) for Summary Judgment:  December 23, 2020

- Summary Judgment Briefing Schedule and Oral Argument/Evidentiary Hearing:  To Be Determined by the Court

The Honorable Loretta A. Preska                                                                              -8-

                                          Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Sergio J. Galvis
Robert J. Giuffra, Jr.
Joseph E. Neuhaus
Thomas C. White
Elizabeth A. Cassady
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004-2498

*Counsel for The Republic of Argentina*

cc:     Counsel of Record