UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ PETERSEN ENERGÍA INVERSORA,     │
│ S.A.U. and PETERSEN ENERGÍA,    │
│ S.A.U.,                         │
│                                 │
│                    Plaintiffs,  │
│                                 │
│ -against-                       │
│                                 │
│ ARGENTINE REPUBLIC and YPF      │
│ S.A.,                           │
│                                 │
│                    Defendants.  │
├─────────────────────────────────┤
│ ETON PARK CAPITAL MANAGEMENT,   │
│ L.P., ETON PARK MASTER FUND,    │
│ LTD., and ETON PARK FUND, L.P., │
│                                 │
│                    Plaintiffs,  │
│                                 │
│ -against-                       │
│                                 │
│ ARGENTINE REPUBLIC and YPF      │
│ S.A.,                           │
│                                 │
│                    Defendants.  │
└─────────────────────────────────┘
```

15 Civ. 2739 (LAP)
16 Civ. 8569 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Plaintiffs Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. (together, "Petersen") and Eton Park Capital Management, L.P., Eton Park Master Fund, Ltd., and Eton Park Fund, L.P. (together, "Eton Park," and together with Petersen, "Plaintiffs"), who previously owned stakes in Argentine energy company YPF S.A. ("YPF"), commenced actions against the Argentine Republic (the "Republic") and YPF (collectively, "Defendants").  On March 30, 2023, the Court issued an Opinion &

1

Order (the "March 30 Opinion") granting YPF's motion for summary judgment, granting the Republic's motion for summary judgment as to Plaintiffs' claim for breach of the duty of good faith and fair dealing and otherwise denying it, and granting Plaintiffs' motion for summary judgment against the Republic as to liability but denying it as to damages.  (Dkt. no. 437.)  The Republic moved for reconsideration of the March 30 Opinion on April 14, 2023.  (Dkt. nos. 439-40.)  Plaintiffs opposed on April 28, 2023.  (Dkt. no. 443.)  The Republic filed its reply in further support on May 5, 2023.  (Dkt. no. 445.)  Finally, the parties each made additional submissions via letter.  (Dkt. nos. 447, 449.)  For the reasons set forth below, the Republic's motion is GRANTED in part and DENIED in part.

I. **Legal Standard**

Reconsideration is an "extraordinary remedy."  In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  Such motions "are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice."  Drapkin v. Mafco Consol. Grp., Inc., 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011). "A motion for reconsideration may not be used to

2

advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Bennett v. Watson Wyatt & Co., 156 F. Supp. 2d 270, 271 (S.D.N.Y. 2001). The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012).

Manifest injustice "is defined as an error committed by the trial court that is direct, obvious, and observable." Corpac v. Does, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013); Westcon Grp., Inc. v. CCC Techs., Inc., 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023). The strict standard "provides relief only in the proverbial 'rare case,'" Corsair Special Situations Fund, L.P. v. Nat'l Res., 595 F. App'x 40, 44 (2d Cir. 2014) (cleaned up), and requires the proponent to "meet [a] high burden" Sigmon v. Goldman Sachs Mortg. Co., No. 1:12-cv-03367 (ALC), 2019 U.S. Dist. LEXIS 32348, at *11 (S.D.N.Y. Feb. 28, 2019). "Courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes. At least one court has held though that reconsideration is not warranted unless the prior decision is 'dead wrong.'" Ogi Oceangate Transp. Co. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist.

LEXIS 74180, at *3 n.1 (S.D.N.Y. Oct. 4, 2007) (quoting Parts & Electric Motors, Inc. v. Sterling Electric. Inc., 866 F.2d 228, 233 (7th Cir. 1988)).

## II. Discussion

The Republic first asserts that it was manifestly unjust for the Court to decide issues of Argentine law without live testimony from the legal experts "[g]iven the disputes between the parties' experts on fundamental questions of Argentine law." (Dkt. no. 439 at 3-4, 6.)[1]  In all of the voluminous briefing submitted by the Republic, the Court did not hear a whisper regarding the necessity of live testimony until the Republic received an adverse ruling.  Indeed, as the Republic told the Court in its brief affirmatively seeking summary judgment, "[a] disagreement of the experts as to an issue of foreign law does not foreclose the granting of a motion for summary judgment." (Dkt. no. 373 at 15 (quoting Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of New York, 269 F. Supp. 2d 424, 439 (S.D.N.Y. 2003)).) It is only now that the Court has resolved the experts'

---

[1] The Republic also implies that the Court's determination that "the Republic was incorrect as a matter of law on each and every one" of the "numerous complex questions of Argentine law" the Republic raised suggests error.  (Id. at 2-3.)  The Court does not claim to be infallible, but perhaps the Court made "numerous" rulings against the Republic because the Republic made meritless arguments in an effort to eliminate its liability for breaching the Bylaws – and made a lot of them.

4

disagreements against the Republic that doing so on the papers has purportedly become "manifest injustice."

A motion for reconsideration is not an opportunity "to advance new facts, issues or arguments not previously presented to the Court," Bennett v. Watson Wyatt & Co., 156 F. Supp. 2d 270, 271 (S.D.N.Y. 2001), and "cannot be used as a vehicle to make new arguments that contradict or are inconsistent with a party's earlier submission" Wilder v. News Corp., 2016 U.S. Dist. LEXIS 128862, at *15 (S.D.N.Y. Sept. 20, 2016). The time for the Republic to argue that the Court could not decide these questions of foreign law without a hearing was during summary judgment briefing, and certainly before taking the exact opposite position when asking for summary judgment on its own behalf. There is no manifest injustice in the Court's failing to hold a hearing that no one – including the Republic – asked for.

In any event, even if the Court considered this argument it would fail. Reconsideration based on manifest injustice is only appropriate where the alleged error is "direct, obvious, and observable." Corpac v. Does, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013). The Republic does not cite a single case holding that a live hearing of expert testimony on foreign law is mandatory. Nor has the Court uncovered any case so holding. This makes

sense.  The determination of foreign law is a question of law, Fed. R. Civ. P. 44.1, and "it is not the credibility of the experts that is at issue, it is the persuasive force of the opinions they expressed."  Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 92 (2d Cir. 1998) (declining to defer to the district court's "ruling on the content of foreign law" despite the district court's opportunity to "assess the witness's demeanor).  Though "[t]he court may consider any relevant material or source, including testimony," Fed. R. Civ. P. 44.1 (emphasis added), the language of Federal Rule of Civil Procedure 44.1 is plainly permissive, and there is no authority to suggest that a hearing is mandatory.  The authority that does exist is to the contrary and holds that no live testimony is required.  Weiss v. La Suisse, Societe d'Assurances sur la Vie, 313 F. Supp. 2d 241, 244 (S.D.N.Y. 2004) ("Unless the law requires me to hear live testimony on these matters -- and I do not believe it does -- plaintiffs cannot complain that they have not had a Rule 44.1 hearing."); 9 Moore's Federal Practice - Civil § 44.1.04 (2023) ("[T]he court is not required to hear live testimony concerning foreign law.").  And with the substantial materials submitted to the Court, including translated versions of the controlling statutes and cases and comprehensive expert opinions that were extensively tested

through depositions and rebuttal reports, (dkt. no. 443 at 4-5 nn.2, 3 (listing materials submitted to the Court)), the Republic "did have a hearing -- just not one involving live witnesses" Weiss, 313 F. Supp. 2d at 244.

The Republic suggests that hearing live testimony is the "fair and prudent course." (Dkt. no. 445 at 1.) Setting aside the belated nature of its embrace of this position, the Republic's view of what is "fair and prudent" is not the standard for reconsideration. The question is whether the Court's made an error that was "direct, obvious, and observable." Corpac v. Does, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013). The Republic has provided no basis for the Court to so find beyond the Republic's belief that the Court was incorrect in its interpretation of Argentine law. If the Republic believes that the Court has gotten Argentine law wrong, its recourse is to raise it with the Court of Appeals at the appropriate time.

The Republic also asserts that Judge Villanueva's opinión jurídica supports reconsideration. (Dkt. no. 445 at 8-9.) The Court appreciates Judge Villanueva's courteous words and credits her intent to provide a "disinterested and objective" opinion "in accordance with [her] most sincere convictions" and her lack of "intention of encroaching upon the jurisdiction" of the

7

Court." (Dkt. no. 445-3 at 3.) Nonetheless, Judge Villanueva's opinion was requested by the Republic itself "in support of the defense of the Argentine Republic" (dkt. no. 445-1 at 1), is a belated expert opinion that is not properly part of the record, and is being used by the Republic to attack and undermine the Court's ruling, regardless of Judge Villanueva's intent.[2] The time to introduce an opinion of this nature was at summary judgment. Nothing prevented the Republic from attempting to submit an opinión jurídica addressing the same legal issues at that time, as it knew the legal positions that Plaintiffs were taking and, indeed, addressed those positions in its own expert reports. A motion for reconsideration may not be used to "adduce new evidence in response to the court's rulings." Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P., 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015). In seeking and submitting an opinion literally reviewing the Court's order, this is precisely

---

[2] The Court also notes with disapproval that Judge Villanueva's opinion was introduced for the first time in the Republic's reply in further support of its motion for reconsideration.

what the Republic has done.³  Indeed, Judge Villanueva's opinion is not newly discovered evidence at all.  It is newly created expert testimony "in response to the court's rulings," is improper, and does not provide a basis for reconsideration.  Id.

Nor does the Court find that reconsideration of its determination regarding the prejudgment interest rate is appropriate.  The Republic bases its argument on what a court in Argentina would "typically" do.  (Dkt. nos. 440 at 18; 445 at 10.)  But what a court in Argentina would "typically" do is irrelevant to whether this Court abused its discretion, much less whether the Court made an "obvious" error.

However, the Court will allow the Republic to submit evidence showing that it did not acquire control of YPF's share or "temporarily occupy" those shares until May 7, 2012.  The Court reserves judgment regarding whether the Republic's reading of its answer is plausible but will allow the Republic to submit

---

³ Nor is Judge Villanueva's opinion "the best available substitute" for "certifying question of foreign law to foreign courts."  (Dkt. no. 445 at 9.)  The Court expresses no view on the merits of whether there should be such a certification system, though it notes that the Rules Committee has not deemed it necessary. Regardless, unlike certification, where the court to which the question is certified receives briefing from the parties and answers the question in the first instance, the Republic's purported "substitute" entails what looks to this Court an awful lot like appellate review of the Court's decision by an Argentine judge at the solicitation of only one of the parties and a second bite at the apple for the Republic.

evidence on this point since the precise date of control requires a trial in any event. However, the Court will not allow the Republic to introduce evidence that it acquired control of YPF's share after May 7, 2012. The YPF Expropriation Law plainly provides for Republic control of the shares by its effective date, as the Court already found.

### III. Conclusion

The Republic's motion for reconsideration (dkt. no. 439) is thus GRANTED in part and DENIED in part. The Republic's letter motion for oral argument (dkt. no. 446) is also DENIED as moot.

The Clerk of the Court shall close the open motions at dkt. nos. 439 and 446 in Civil Case Number 15-cv-2739. The Clerk of the Court shall close the open motions at dkt. nos. 368 and 375 in Civil Case Number 16-cv-8569. Counsel shall confer and inform the Court by letter no later than May 31 whether their positions regarding how to proceed, set forth at docket numbers 438 and 441, have changed in light of this decision.

**SO ORDERED.**

Dated:    New York, New York
          May 24, 2023

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge