UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETERSEN ENERGIA INVERSORA, S.A.U. ET AL.,<br><br>                    Plaintiff,<br><br>-against-<br><br>ARGENTINE REPUBLIC ET AL.,<br><br>                    Defendants. | No. 15 Civ. 02739 (LAP)<br><br><u>ORDER</u> |
| ETON PARK CAPITAL MANAGEMENT L.P. ET AL.,<br><br>                    Plaintiff,<br><br>-against-<br><br>ARGENTINE REPUBLIC ET AL.,<br><br>                    Defendants. | No. 16 Civ. 08569 (LAP)<br><br><u>ORDER</u> |

LORETTA A. PRESKA, Senior United States District Judge:[1]

       The Court is in receipt of Defendant the Argentine Republic's ("Defendant" or "the Republic" or "Argentina") request for a pre-motion conference regarding Defendant's anticipated motion for reconsideration of the Court's July 29, 2025 decision, (dkt. no. 772), regarding off-channel communications, (dkt. no. 767). The Republic argues that the Court analyzed the discoverability of off-channel communications as "solely governed by the principles of international comity" and "overlooked the threshold question"

---

[1] References to the docket refer to the lead case, <u>Petersen Energia Inversora, S.A.U. et al. v. Argentine Republic et al.</u>, No. 15 Civ. 02739.

whether the communications are within the Republic's "possession, custody, or control." (Dkt. no. 767 at 1; see also July 29, 2025 Tr. 52:9-53:23 [dkt. no. 772].)  Plaintiffs Petersen Energia Inversora et al. and Eton Park Capital Management L.P. et al. oppose the request, (dkt. nos. 774-75).  Defendant replied, (dkt. nos. 777, 780).

The Court treats Defendant's pre-motion letter as a motion (the "Motion"), Plaintiffs' letter as an opposition, and the Republic's second letter as a reply.[2]  For the reasons set forth below, the Motion is DENIED.

## I.  <u>Applicable Law</u>

### a. Motion for Reconsideration

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." <u>Aczel v. Labonia</u>, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  <u>In re Health Mgmt. Sys., Inc. Sec. Litig.</u>, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).

In this jurisdiction, motions to reconsider are generally denied "unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that

---

[2] The Court is also in receipt of Defendant's recently filed motion for reconsideration, (dkt. nos. 781-82).

might reasonably be expected to alter the conclusion reached by the court." Nakshin v. Holder, 360 F. App'x 192, 193 (2d Cir. 2010) (citation omitted); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotations and citations omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." In re Eur. Gov't Bonds Antitrust Litig., No. 19 Civ. 2601 (VM), 2022 WL 2168358, at *3 (S.D.N.Y. June 16, 2022) (quoting Shrader, 70 F.3d at 257).

### b. Federal Rule of Civil Procedure ("FRCP") 34(a)(1)

Under FRCP 34(a)(1), a party is obligated to produce requested documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "The concept of control has been construed broadly." Coventry Capital US LLC v. EEA Life Settlements Inc., 334 F.R.D. 68, 72 (S.D.N.Y. 2020) (internal quotations and citation omitted). "[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." Smith v. Pergola 36 LLC, No. 22 Civ. 4052 (LJL), 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022)

(quoting Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd., 171
F.R.D. 135, 146–47 (S.D.N.Y. 1997)).  "A party is deemed to control
documents that it has the legal right or the practical ability to
obtain—even where those documents are in the physical possession
of non-parties."  Waite v. UMG Recordings, Inc., 2020 WL 3959185,
at *2 (S.D.N.Y. July 13, 2020) (quoting Chevron Corp. v. Donziger,
296 F.R.D. 168, 190 (S.D.N.Y. 2013)) (internal quotations
omitted).  "Legal and practical inability to obtain the requested
documents from the non-party, including by reason of foreign law,
may place the documents beyond the control of the party who has
been served with the Rule 34 request."  Cohen v. Horowitz, No. 07
Civ. 5834 (PKC), 2008 WL 2332338, at *2 (S.D.N.Y. June 4, 2008)
(emphasis added).

"The party seeking discovery has the burden of showing that
the documents are within the other party's control."  Coventry
Capital, 334 F.R.D. at 73.  When the requesting party cites
specific evidence that the producing party has control, the burden
shifts to that party to prove otherwise.  See In re Dunne, No.
3:17 Civ. 1399 (MPS), 2018 WL 4654698, at *5 (D. Conn. Sept. 27,
2018); Mason Tenders Dist. Council of Greater New York v. Phase
Constr. Servs., Inc., 318 F.R.D. 28, 43 (S.D.N.Y. 2016); but see
S.E.C. v. Gibraltar Glob. Sec., Inc., No. 13 Civ. 2575 (GBD) (JCF),
2015 WL 1514746, at *2 (S.D.N.Y. Apr. 1, 2015) ("However, where
the alleged obstacle to production is foreign law, the burden of

proving what that law is and demonstrating why it impedes production falls on the party resisting discovery.").[3]

### c. Argentine Law

It is undisputed that the Republic lacks "possession" or "custody" of the communications.  Thus, the question turns on whether the Republic has "control" over the communications.

The Republic argues that to determine whether the communications are within the Republic's "control," the Court must look at Argentine law because it governs the relationship between the Republic and its current and former officials.  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138-39 (2d Cir. 2007) (vacating sanctions imposed against the chairman of the board of a Russian corporation for failing to produce the corporation's documents, holding that if "Russian law prevents his production of the documents, a finding of control cannot be sustained"); see also Owen v. Elastos Foundation, No. 19 Civ. 5462 (GHW) (BCM),

---

[3] The three cases that the court cites to in S.E.C. v. Gibraltar Glob. Sec., Inc. are about foreign law issues that arise in the context of producing discovery as opposed to regarding determining whether the party has "possession, custody, or control" under foreign law.  Additionally, to date, there are approximately 19 cases that cite to S.E.C. v. Gibraltar Glob. Sec., Inc., and, aside from S.E.C. v. Gibraltar Glob. Sec., Inc. itself, the cases relate to foreign law issues that arise in the context of producing discovery as opposed to regarding whether the party has "possession, custody, or control" of the documents.  See, e.g., In re Terrorist Attacks on Sept. 11, 2001, No. 03 MD 01570 (GBD) (SN), 2023 WL 4447869, at *5 (S.D.N.Y. July 11, 2023); Laydon v. Mizuho Bank, Ltd., 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (cleaned up)).

2023 WL 2537287, at *2-3 (S.D.N.Y. Mar. 16, 2023) (holding that a Singapore company could not be compelled to produce the personal emails of its China-based employee because the plaintiffs did not meet their "burden" to establish "Singaporean or Chinese law as it bears on the 'control' question" and the court was "not willing to assume that [the non-U.S. employer] ha[d] the same 'practical ability' to coerce compliance from [the employee] that a U.S. corporation would have with respect to documents in the . . . possession of its . . . employees.").

The Court considers the laws regarding whether the communications at issue are "public documents." If the communications are "public documents," by collecting them the Republic would not violate the other laws that the parties mention including, _inter alia_, Law No. 25,326,[4] Articles 153 and 153 bis of the Argentine Criminal Code, and many articles of the Argentine Constitution.  (_See_ dkt. nos. 660, 672.)

---

[4] The Republic argues that Argentina's Personal Data Protection Law No. 25,326 applies and "the 'treatment or processing' of 'sensitive data'—which includes merely collecting or searching any such data on an individual's phone or email account—is illegal absent the data owner's prior written and informed consent." (Dkt. no. 658 Ex. E, Arts. 1, 2, 5.1, 7.)  However, Article 5.2(b) states that consent shall _not_ be required where "the data is collected for the exercise of the State's powers or pursuant to a legal duty."  (_Id._ at ECF 4.)

### i. Law No. 27,275

The purpose of Law No. 27,275 is "to guarantee the effective exercise of the right to access public information, promote citizen participation, and ensure transparency in public administration." (Dkt. no. 658 Ex. B at ECF 3.)  Article 1 states, "Presumption of publicity: All information held by the State shall be presumed public, except for the exceptions provided in this law."  (Id.) And, "In case of doubt, the interpretation of this law or any regulation on the right to access information shall always favor the broadest effectiveness and scope of the right to information. (Id. at ECF 4.)  Article 3 defines "public information" and "document" as follows:

> a) Public information: Any type of data contained in documents of any format that the reporting entities listed in Article 7 hereof generate, obtain, transform, control, or hold;
>
> b) Document: Any record generated, controlled, or held by the reporting entities listed in Article 7 of this law, regardless of its form, medium, origin, date of creation, or official status.
>
> (Id.)

Article 8 states that reporting entities may refuse to produce "i) Information containing personal data that cannot be provided using dissociation procedures, unless it complies with the requirements set forth in Law No. 25,326 on personal data protection, as amended."  (Id. at ECF 6.)

### 1. Decree No. 206/2017

In March of 2017, Decree No. 206/2017 was announced. (Dkt. no. 658 Ex. C. at ECF 3.)  Section 3 states,

> (a) Public Information: Public information shall not be understood to mean information containing private data created, obtained, transformed, controlled by, or in the custody of, private individuals or legal entities, or in the absence of a committed public interest, outside the scope of activity of the reporting entities listed in Section 7 of Law No. 27,275, as amended.
>
> (b) Document: The definition of document, as set forth in Law No. 27,275, as amended, must be understood as referring to any record generated, controlled, or held within the framework of government activity. Preparatory deliberations and working papers, or the preliminary examination of a certain matter, shall not be considered documents of a public nature.
>
> (Id. at ECF 4.)

Under Section 8, it states "(i) This exception shall not apply whenever the personal data owner has given his or her consent for the relevant data to be disclosed, or when such data is closely related to the sphere of activity of government officials." (Id. at ECF 6 (emphasis added).)

### 2. Resolution 237/2021

This Resolution provides further analysis of Law No. 27,275 as it responds to requests for emails from government officials' official accounts.  The Resolution states,

> In relation to the information requested . . . it is important to emphasize that the emails of public officials, sent and/or received in the course of their duties-especially when they are sent through official mailboxes-are public documents. They do not fall within the private sphere of individuals

holding public office, not only because they are generated with public funds but also because the information they contain is part of the public domain.

(Dkt. no. 672 Ex. C at ECF 5 (emphasis added).)    Thus, the Resolution recognizes that emails of officials, sent and/or received in the course of their duties, that are not sent through official mailboxes are also public documents.

### 3. Resolution 130/2023

This resolution rejected a public information request for an official's emails under Law No. 27,275 and concluded that government emails "received or sent through institutional inboxes" "deserve the highest level of protection, as established by the Argentine Constitution," which protects an individual's right to privacy.  (Dkt. no. 678 Ex. A at ECF 7.)  However, it also states that the principle of Facilitation (Section 2 of Law No. 27,275) provides that "no public authority may refuse to disclose a document under the exceptions contained in this law unless the harm caused to the protected interest is greater than the public interest in obtaining the information."  (Id.)

### 4. Decree No. 780/2024

Decree No. 780/2024, announced September 2, 2024, amends Law No. 27,275 and Decree No. 206/2017.  At the outset it states,

It is essential to regulate Article 3 of Law No. 27,275, as amended, in order to clarify the scope of the concept of 'public information,' which covers matters of public interest related to state activity and its oversight and excludes by its very nature information that is in the private sphere of

the official or judge, especially where the request targets
distinctly domestic aspects.  In this respect, requests for
information not related to state activity fall outside the
scope and protection of Law No. 27,275, as amended, and,
therefore, do not create any obligation for the National
Public Administration to provide such information.

(Dkt. no. 780 at ECF 3.)

It amends Article 3 of Law No. 27,275 and Decree No. 206/2017
to state,

Public Information.  Information containing private data
generated, obtained, transformed, controlled, or held by
private legal entities or individuals, or information where
there is no public interest at stake, and which is unrelated
to the reporting parties specified in Article 7 of Law No.
27,275, as amended, shall not be deemed public information.

(Id. at ECF 5.)

## II.  **Discussion**[5]

The Republic argues that United States law asks whether the
Republic has "control over the communications," which is a question
that turns on Argentine law.

Plaintiffs contend that United States law governs whether the
Republic has control.  Plaintiffs argue that the Republic has
"control" over the communications under United States law because,
inter alia, (1) United States corporations are sometimes found to
control work-related communications on employees' personal
devices, Smith, 2022 WL 17832506, at *4 (collecting cases), and

---

[5] Notably, the Court has already found that there is sufficient
evidence that many officials use off-channel communications to
conduct government business.  (July 29, 2025 Tr. 53:16-18.)

(2) the Republic has never denied that it "has the ability in the ordinary course of business to obtain documents" from off-channel platforms, <u>Coventry Cap.</u>, 334 F.R.D. at 72-73.

Assuming, without deciding, that Argentine law applies and the Court may not conduct a comity analysis, the Republic's argument still falls short. First, the Court turns to whether off-channel communications concerning official business constitute "public information" under Argentine law, such that the Republic can request the communications from the officials. In the spirit of "favor[ing] the broadest effectiveness and scope of the right to information," (dkt. no. 658 Ex. B at ECF 4), the Court finds that Law No. 27,275, its decrees and related resolutions, (<u>see supra</u> Section I.c.i), do not foreclose the finding that officials off-channel communications relating to "state activity," (dkt. no. 780 at ECF 3), can be deemed "public information" under Argentine law after conducting a factual analysis and weighing the protected officials' interests with the public interest in obtaining the information, (dkt. no. 678 Ex. A at ECF 7).

Additionally, even if the Court found that under Argentine law off-channel communications are not "public information," the Republic, a sovereign nation that emphasizes its desire to cooperate with this post-judgment litigation, still has the "practical ability" to receive the communications through other legal avenues. The Republic can (1) request the consent of the

individual officials; (2) amend the law by statute; or (3) order it through the Argentine courts.[6]

Accordingly, off-channel communications are in the "control" of the Republic, and the Motion is DENIED.

## III.  Conclusion

For the reasons set forth above, the Motion is DENIED.  The Clerk of the Court is directed to close dkt. nos. 767 and 781 on the No. 15 Civ. 02739 docket and dkt. no. 683 and 695 on the No. 16 Civ. 08569 docket.

**SO ORDERED.**

Dated:    August 27, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

---

[6] The parties' experts agree that an Argentine court can order the Republic to access the communications. (Compare Dkt. no. 660 at ECF 9-10 with dkt. no. 672 at ECF 8-11; but see dkt. no. 678 ¶ 24 ("[I]t would be necessary that the order be directed to the owners of the devices and personal accounts."). See S.E.C. v. Gibraltar Glob. Sec., Inc., 2015 WL 1514746, at *2 ("The opinion of an expert as to foreign law does not bind the court, even if it is uncontradicted.").