January 27, 2026

**VIA ECF**

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> **Re**: *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, **No. 15-cv-02739;** *Eton Park Capital Management, L.P. v. Argentine Republic*, **No. 16-cv-8569**

Dear Judge Preska:

The parties respectfully submit this update on certain discovery matters in advance of the January 29, 2026 conference.

### A. "Off-Channel" Communications for "Alter-Ego" Discovery (July 26, 2025 Joint Status Report ("JSR") at 28-40)

**Plaintiffs' Position:**

On January 15, 2026, Plaintiffs moved for sanctions concerning the Republic's failure to produce off-channel communications that it claims are not within its control. *See generally* Dkt. 852.

Separately, on January 10, 2026, the Republic made a limited production of off-channel communications for five custodians. *See* Dkt. 854-3. Although Plaintiffs continue to review that production, it clearly demonstrates that officials routinely use off-channel communications to conduct official business, providing insight into the nature of the relationship between the government and the alter-ego entities. For example, the production includes multiple WhatsApp messages between BCRA Governor Bausili and the Secretary of the Treasury discussing payments ordered by Minister Caputo (Ex. A at AR00233124-28); messages between the president of ENARSA and the Energy Secretariat regarding project funding (*id*. at AR00232962-67); and messages between the CEO of AA and the

Hon. Loretta A. Preska
January 27, 2026
Page 2

Secretary of the Treasury requesting funds from the Ministry of Economy (*id.* at AR00233111-114). Although the Republic selectively omits relevant details in its portion of the letter, the Republic's descriptions of its own documents further establish that major government business (*e.g.*, official direction and operational matters) is routinely conducted between the Republic and the alter-ego entities at the highest levels. The Republic even goes so far as to note that it is exercising its authority as the "majority shareholder" of each of these alter-ego entities.

The Republic does not dispute that these communications reflect official business and instead argues that Plaintiffs have not yet affirmatively advanced any argument "relevant" to the alter-ego inquiry. These communications, however, reflect significant interactions between the government and the alter-ego entities that support Plaintiffs' theories, and, at the very least, confirm the relevance of this discovery. As the Court made clear, Plaintiffs' alter-ego theories are "not today's issue" and do not negate the Republic's obligations to produce off-channel communications so that Plaintiffs can gather all the relevant evidence. *See* Dec. 9 Tr. at 9:18-10:2. It is the Republic's own conduct—marked by delay, non-compliance, and shifting justifications—that has repeatedly impeded the discovery process, not Plaintiffs' good-faith efforts to obtain Court-ordered discovery.

Moreover, while the Republic admits that it has access to off-channel communications for four custodians—Luis Pierrini, Nicolás Posse, Raúl Rigo, and Gabriel Rubinstein[1]—it has not produced those materials in direct violation of the Court's order requiring production by January 10, 2026. *See* Dec. 9 Tr. at 17:15-17. The Republic neither complied with the Court's deadline nor sought relief from the Court or Plaintiffs' consent to an extension before that deadline elapsed. The Republic's after-the-fact justifications—unsupported by evidence and rooted in delays of its own making—are irrelevant and do not excuse the Republic's blatant disregard of the Court's order. Nor can the Republic rely on a distinction between current and former officials to justify ignoring court deadlines and delaying required responses to Plaintiffs. Plaintiffs respectfully request that the Court direct the Republic to immediately produce all off-channel communications for these four custodians and consider remedies for the Republic's violation of the Court's order.

---

[1] The Republic's portion of the letter indicates that it intends to produce responsive documents for Gabriel Rubinstein "by early next week."

Hon. Loretta A. Preska
January 27, 2026
Page 3

The Republic has likewise failed to confirm whether it intends to produce off-channel communications for five additional custodians: one who is apparently consulting with his personal lawyer (Jose Luis Daza Narbona), and four who have not responded to the Republic's requests (Agustín Oscar Rossi, Juan Luis Manzur, Eduardo de Pedro, and Guillermo Michel). *See* Dkt. 853 at 20 n.5; *see also* Dkts. 842-3 at 6-10; 842-4 at 3.[2] There is no justification for any further delay. Plaintiffs respectfully request that the Court direct the Republic to state its position as to these custodians immediately.

At bottom, the Republic has offered no factual support for its failure to produce communications for these remaining custodians, regardless of whether these custodians are current or former officials, much like the custodians at issue in Plaintiffs' sanctions motion. Any evidentiary hearing on that motion should therefore include testimony regarding the Republic's access to these custodians' communications.

Plaintiffs also have significant concerns regarding the Republic's methodology for collecting, searching, and producing certain off-channel communications, including its apparent reliance on custodians to self-collect relevant off-channel communications, and the Republic's preservation methods, and will confer with the Republic concerning those deficiencies.

Lastly, the Republic has not articulated a legitimate basis for its confidentiality designation and continued sealing of the WhatsApp messages contained in the parties' last joint letter. *See* Dkts. 842 at 5; 842-1.

**Republic's Position**:

Plaintiffs' theory is that text messages on the devices of government officials will show that five separate entities (YPF, BCRA, ENARSA, BNA, and AA) are actually "alter egos" of the Republic, meaning that government officials allegedly

---

[2] The Republic informed Plaintiffs on January 23, 2026 that Messrs. Federico Bernal, Rafael Ignacio Brigo, and Norman Darío Martínez have self-reported that they purportedly have no relevant communications. Plaintiffs have serious concerns regarding the methodology by which this determination was made, the adequacy of the Republic's verification efforts, and whether all responsive communications have been properly preserved.

Hon. Loretta A. Preska
January 27, 2026
Page 4

dominate these entities' corporate existence. It is telling that now that Plaintiffs have these text messages from personal devices, they are unable to point to anything that remotely supports their "alter ego" theories. Nothing in any communication Plaintiffs have referenced shows "significant and repeated control over . . . day-to-day operations" that might be relevant to an "alter ego" inquiry, *EM Ltd.* v. *Banco Central de la Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015), or even a single policymaking or strategic decision conducted through these informal channels. That officials of the Republic, as a majority shareholder of these entities, discuss topics relevant to the entities is not sufficient. *See*, *e.g.*, *Seijas* v. *Republic of Argentina*, 2009 WL 10700009, at *2 (S.D.N.Y. Aug. 19, 2009) (fact that Republic "owns almost 100% of the airline's stock" and "oversee[s] Aerolíneas operations" did not make Aerolíneas an alter ego).

Notwithstanding its objections to this discovery, the Republic has, in light of this Court's orders, gone to great lengths to collect documents from the personal devices of its current and former officials. For context, the Court should understand that this is not a simple document collection. Each collection is a time-consuming and laborious undertaking. The process involves scheduling one-on-one meetings with each consenting custodian (many of whom are high-level officials with many demands on their time), and identifying and imaging, one-by-one, the potentially responsive chat threads or e-mail chains with the assistance of a discovery vendor. This process has yielded over 700 pages of communications that the Republic has produced to Plaintiffs from a dozen custodians, including some of the Republic's most senior officials: the Secretary of the Treasury (Carlos Jorge Guberman); the Secretary of Energy (María Carmen Tettamanti); and the former Chief of Cabinet from the current administration (Guillermo Alberto Francos). The Republic has now produced documents from all consenting custodians who are current officials. Plaintiffs have separately filed a motion with respect to non-consenting custodians, which the Republic does not address here.

Plaintiffs' letter raises issues with respect to two categories of officials.

*First*, Plaintiffs complain that the Republic has "access" to documents from four officials—Luis Pierrini, Nicolás Posse, Raúl Rigo, and Gabriel Rubinstein—but has not yet produced them. Plaintiffs' claim of supposedly ready "access" is based on the fact that, at earlier points, these individuals indicated a willingness to permit collection from their personal devices. At this point, none is employed by

Hon. Loretta A. Preska
January 27, 2026
Page 5

the government.  Nevertheless, the Republic is continuing to try to produce their documents as soon as possible.[3]

Mr. Rubinstein was abroad until January 12, and the Republic accordingly collected his documents upon his return on January 16.  The Republic is reviewing and processing those materials and expects to produce any responsive documents by early next week.  While Messrs. Pierrini, Posse, and Rigo previously indicated their willingness to cooperate, they have not made themselves available for collection meetings notwithstanding the Republic's repeated outreach.  The Republic will continue to seek to collect their documents, and will promptly produce any responsive documents it obtains.  But as the Court has recognized, documents of former officials, particularly those from the prior administration, are not as accessible as those of current officials.  *See* Dec. 9, 2025 Hr'g Tr. at 18:11-12 ("THE COURT:  With respect to folks from the prior administration, I am not sure how you prevail on that."); *see also Miniace* v. *Pac. Maritime Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006) (citing *Golden Trade* v. *Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y.1992)) (denying motion to compel production of former officers' documents where party seeking production fails to show producing party "has control over the documents").

*Second*, Plaintiffs say that the Republic has not yet "confirmed" whether it "intends" to produce documents on the personal devices of seven other former officials (Messrs. Brigo, Martínez, Bernal, Rossi, Manzur, de Pedro, and Michel) and one current official (Mr. Narbona), but none of these individuals has consented to collection of their personal devices despite the Republic's requests.  Two of these former officials (Messrs. Bernal and Brigo) affirmatively informed the Republic that they did not use personal devices for official business and possess no responsive documents.  Mr. Martínez, also a former official, likewise stated he possesses no documents related to this action.  Mr. Narbona, the sole current official among these eight, has advised the Republic that he is consulting with his personal attorney about this matter.  The remaining four individuals (Messrs. Rossi, Manzur, de Pedro, and Michel)—all former officials—have not responded to the Republic's repeated requests for consent.

---

[3]  Although the Republic identified Mr. Pierrini as a current official in earlier communications with Plaintiffs, he resigned on January 21, 2026.  The Republic had been working to schedule his collection prior to his resignation, and it will continue to seek his cooperation.

Hon. Loretta A. Preska
January 27, 2026
Page 6

In sum, the Republic has collected and produced all personal communications that are reasonably available to it, including from some of the highest-ranking officials in government. Its production is now complete for all consenting current officials and substantially complete for former officials who have provided cooperation to date.

Plaintiffs argue the productions to date confirm that "official business" takes place on personal devices and that the productions "provide insight" into the "nature" of the relationships between the Republic and the five entities in question. Plaintiffs mischaracterize these messages as reflecting "significant interactions between the government and the alter-ego entities that support Plaintiffs' theories." There were no "orders" for payments or informal funding requests made through unofficial channels. In fact, the produced documents confirm that the "official business" that Plaintiffs claim is taking place on personal devices generally consists of administrative coordination. The examples Plaintiffs cite have nothing to do with the alter-ego analysis. They instead are: (i) an exchange between an official at BCRA and the Republic about what bank account would be used to make a debt payment under the Yacyretá Binational Hydroelectric Project (AR00233124–AR00233128); (ii) an instance where the President of ENARSA forwarded to a Republic official identical copies of two communications the ENARSA President previously sent through the official communications system (Sistema de Gestión Documental Electrónica, or "GDE") (AR00232962–AR00232967); and (iii) discussions between the CEO of AA and a Republic official concerning AA's collective bargaining negotiations, which the Republic oversees for all Argentine corporations—and in which the AA CEO disclaimed any request for additional Treasury funding (AR00233111–AR00233120). Given the Republic's ownership stake in these entities, it is not surprising that these communications took place.

Finally, with respect to the sealing of the WhatsApp messages and related descriptions contained in the parties' last joint letter, the Republic stated on December 9 that the information redacted in the December 8 joint letter to the Court is not confidential. *See* Dec. 9, 2025 Hr'g Tr. at 58:12-60:6. Exhibit A to that letter, consisting of a series of WhatsApp communications produced by the Republic, was filed under seal as those communications are "Confidential" pursuant to the Protective Order. *Petersen* ECF No. 674.

Hon. Loretta A. Preska
January 27, 2026
Page 7

### B. Alter Ego Custodians for Internal and Off-Channel Searches (JSR at 28-40)

**Plaintiffs' Position:**

On October 1, 2025, Plaintiffs proposed additions to the Republic's list of alter-ego custodians. Although the parties have reached agreement on certain custodians, the Republic continues to object to the inclusion of two proposed alter-ego custodians: Diego Aduriz (YPF and ENARSA) and Guillermo Alberto Francos (BCRA, AA, BNA, and ENARSA). *See* Dkts. 853 at 16 n.2; 842-6 at 3.

Plaintiffs understand that Mr. Aduriz served as an advisor to the Minister of Economy, Luis Caputo, and maintained an official Ministry of Economy email address in that capacity. *See* Dkt. 842-6 at 3. He is also a board member of ENARSA and has attended YPF meetings in his capacity as an advisor to Minister Caputo. *See id*. The Republic admits that as of January 14, 2026, Mr. Aduriz is now a government official. Mr. Francos served as the Republic's Chief of Cabinet—a role that is central to the administration of all Argentine state-owned entities—until October 2025. *Id*. In that role, he appears to have approved the budgets of state-owned entities, including BCRA, AA, BNA, and ENARSA. *Id*. Given that Mr. Francos is already an agreed-upon custodian for YPF, the additional burden of searching his communications for information relating to the other alter-ego entities is minimal. *See* Dkt. 853 at 16 n.2. Any alleged burden associated with the collection of Mr. Francos' communications relating to BCRA, AA, BNA and ENARSA, is entirely of the Republic's own making given that Plaintiffs proposed Mr. Francos as a custodian for all five entities on October 1, 2025, and the Republic chose to limit its collection to YPF.

In sum, both Mr. Aduriz and Mr. Francos are likely to possess information relevant to day-to-day interactions with the proposed state-owned entities. *See* July 29 Tr. at 58:4-5 (considering evidence of custodian "interven[ing] in the day-to-day operations" of state-owned entity and granting discovery), 58:23-24 (considering custodian's "involv[ement] in trade and economic policy decisions" affecting state-owned entities and granting discovery). Plaintiffs respectfully request that the Court direct the Republic to include Messrs. Aduriz and Francos as custodians for purposes of its internal and off-channel searches.

Hon. Loretta A. Preska
January 27, 2026
Page 8

**Republic's Position**:

The Republic objects to Plaintiffs' request to add Diego Aduriz (as to YPF and ENARSA) and Guillermo Alberto Francos (as to BCRA, AA, BNA, and ENARSA) as "alter-ego" custodians. The parties have already agreed to 36 custodians, including the addition of five custodians as to YPF on October 31 (*i.e.*, Guillermo Alberto Francos, Eduardo Oreste, Damián Eduardo Sanfilippo, María Carmen Tettamanti, and Horacio Federico Veller). Plaintiffs have no basis to again expand the list of agreed-upon custodians.

Until January 15, 2026, Mr. Aduriz was not a Republic official.[4] He was an outside advisor to the Minister of Economy. Plaintiffs offer no basis for adding him as yet another "alter ego" custodian. As to YPF, Plaintiffs assert only that he "has attended YPF meetings in his capacity as an advisor to Minister Caputo." Plaintiffs are apparently referring to an April 24, 2024 document produced by YPF, now a third party to this case, but there Mr. Aduriz simply forwards a meeting invitation to a multi-party meeting attended by other energy producers. YPFSUBPOENA00005309. That is no basis to conclude that he has relevant, non-duplicative documents. As to ENARSA, Plaintiffs point to Mr. Aduriz's Board service. But neither this position nor his role as an outside advisor to the Minister of Economy establishes that Mr. Aduriz is likely to have information about the day-to-day relationship between the Republic and ENARSA.

Likewise, Mr. Francos, who resigned as Chief of Cabinet Ministers in October 2025 and is now a former official, is not a proper custodian with regard to any entity other than YPF. The Republic agreed to designate Mr. Francos as a custodian only with respect to YPF because he was a member of YPF's Board of Directors while serving as a government official.[5] He has held no comparable roles with respect to BCRA, AA, BNA, or ENARSA.

---

[4]  Mr. Aduriz was on January 14 appointed to the role of Executive Director at Yacyretá Bi-National Entity, a position having no relevance to Plaintiffs' requests. Although Mr. Aduriz had been assigned a Ministry of Economy e-mail address while he served in his advisory role, the Republic routinely provides non-government individuals serving in advisory roles with e-mail addresses for administrative convenience, coordination, and cybersecurity purposes.

[5]  Mr. Francos continues to be a member of YPF's Board of Directors. The designation of government officials as board members of companies in which the

Hon. Loretta A. Preska
January 27, 2026
Page 9

Plaintiffs speculate that, because Mr. Francos formerly served as the Republic's Chief of Cabinet he "is likely to possess information relevant to BCRA, AA, BNA and ENARSA." *Petersen* ECF No. 842-6 at 3. But the question is not whether Mr. Francos may have "information" generally on the subject of four state-owned entities. The question is whether he has communications relevant to the alter-ego issue, specifically, the "exercise[ of] significant and repeated control over [the entities'] day-to-day operations." *EM Ltd.*, 800 F.3d at 91. Plaintiffs have made no such showing with respect to BCRA, AA, BNA, and ENARSA. *Petersen* ECF No. 842-7 at 3.

Moreover, Plaintiffs claim that adding Mr. Francos as a custodian for BCRA, AA, BNA, and ENARSA presents "minimal" burden. This is wrong. When the Republic collected his documents, Mr. Francos did not consent to the Republic collecting all of his personal data. Instead, he identified the WhatsApp conversations on his personal device that could be potentially relevant to YPF (WhatsApp being the only application through which Mr. Francos reported he may have engaged in potentially relevant communications), and consented to the Republic collecting those conversations. If Mr. Francos were added as a custodian for BCRA, AA, BNA, and ENARSA, the Republic would have to request his consent a second time and, if agreed, perform another collection. The burden of doing so is wholly unjustified given that Mr. Francos had no role at BCRA, AA, BNA, and ENARSA and is no longer a government official—both facts that Plaintiffs do not dispute. Plaintiffs have pointed to nothing to suggest that he has any regular interactions with these entities.

## C. Requests Regarding Certain Assets in Argentina (JSR at 10-17)

### Plaintiffs' Position:

On December 9, 2025, the Republic represented that its production of documents responsive to Plaintiffs' requests concerning certain assets in Argentina—including debts, commercial transactions, letters of credit, escrow accounts, and movable assets—was "substantially complete." Dkt. 842 at 6. That representation followed what the Republic described as a three-month search across

---

government has an interest is neither unusual nor indicative of alter ego status. *See EM Ltd.*, 800 F.3d at 92–93 ("[H]iring and firing of board members or officers is an exercise of power incidental to ownership" and "not synonymous with control over the instrumentality's day-to-day operations[.]").

Hon. Loretta A. Preska
January 27, 2026
Page 10

114 ministries.  The resulting production, however, consisted of approximately 15 files, along with the Republic's representation that it had not identified any government-owned movable assets in Argentina valued at over $1 million, or any escrow accounts or letters of credit.  Dkt. 842 at 7.  That the Republic produced so few documents after such a purportedly extensive search is simply not credible on its face given the scope of the search the Republic claims to have conducted and calls into question the adequacy of its search methodology.  In light of this meager production, Plaintiffs respectfully request that the Court direct the Republic to identify a Rule 30(b)(6)-style witness (or multiple witnesses, if the Republic prefers) with knowledge of both the documents produced and the scope and methodology of the Republic's searches in response to Plaintiffs' assets in Argentina-related requests—and who is prepared to testify in accordance with the obligations imposed by Rule 30(b)(6).[6]

    In addition, the Republic refuses to search seven additional ministries, secretariats, and undersecretariats relevant to Plaintiffs' requests: (1) the Vice Presidency of the Nation (presides over the Senate and impacts legislation and governance of state-owned enterprises); (2) Deputy Chief of the Cabinet of the Interior—Secretariat of Provinces and Municipalities (oversees federal trust funds and registries and manages financial matters concerning provinces and municipalities); (3) Secretariat of Communication and Media (oversees state-owned media operations including commercial contracts); (4) Ministry of Justice (handles national registries evidencing asset ownership and corporate governance); (5) Office of the Treasury Attorney of the Nation (serves as chief legal counsel); (6) Agency for the Transformation of State-Owned Enterprises (oversees restructuring of state-owned enterprises); and (7) National Securities Commission (regulates capital markets and securities).  *See* Dkt. 854-2 at 3-4 (identifying the bases and relevant requests for each additional ministry).  Plaintiffs proposed these search locations in July, *see* Dkts. 854-2 at 3; 789 at 2, but the Republic informed Plaintiffs that it would not conduct the requested searches on December 8, 2025, *see* Dkt. 842-7 at 2.  Given the *de minimis* production to date, Plaintiffs' requests are not based on speculation, but on the Republic's own representations regarding the scope of its operations and the implausibly limited results of its purported searches.  Plaintiffs therefore request

---

[6] The depositions conducted to date concerned the Republic's responses to Plaintiffs' requests concerning assets and other categories of discovery *outside* of Argentina.

Hon. Loretta A. Preska
January 27, 2026
Page 11

that the Court order the Republic to search the seven proposed ministries for responsive documents.

**Republic's Position:**

The Republic has substantially completed its production related to assets in Argentina. Plaintiffs initially demanded that the Republic identify all of its (i) debts, (ii) commercial transactions, (iii) letters of credit, (iv) escrow accounts, and (v) movable assets in Argentina. After several meet and confers around the July 29 and August 6, 2025 court conferences, the Court ordered the Republic to search centralized sources that may contain this information and "begin productions thereafter." Sept. 4 Hr'g Tr. 8:11. Accordingly, the Republic searched for these five categories of assets in centralized sources by (i) identifying to Plaintiffs the 114 ministries, secretariats, and undersecretariats that were most likely to possess information concerning these assets in Argentina, and then (ii) requesting that those entities identify databases that were likely to contain information responsive to Plaintiffs' requests. In all, thirteen systems were identified by various ministries across the National Public Administration. *See* Ex. B (Aug. 29, 2025 Ltr. from A. Davidoff to S. Levine); Ex. C (Oct. 31, 2025 Ltr. from A. Davidoff to S. Levine), at 1-4.

The Republic then directed the various ministries, through their secretariats, undersecretariats, and directorates, to conduct reasonable searches of those systems. These searches identified responsive documents principally regarding the Republic's debts and movable assets in Argentina—specifically financial statements, debt-related records, inventories of aircrafts and other movable assets, and records of approved work certificates pending payment. The Republic produced those documents on November 3 and December 8, 2025.

Plaintiffs' principal complaint is that the volume of documents located in the searches is low. Plaintiffs ignore that for the two broadest categories—commercial transactions and debts—the Republic responded by directing Plaintiffs to *publicly available databases*. Rather than producing all documents from those large public databases, which would serve no purpose, the Republic provided Plaintiffs with detailed information regarding the publicly available sources and instructions on how to access this information.

Specifically, for commercial transactions, the Republic directed Plaintiffs to the public database containing commercial transactions (COMPR.AR), explained its

Hon. Loretta A. Preska
January 27, 2026
Page 12

contents, and provided Plaintiffs with an instructional guide.  As previously explained to Plaintiffs, the Republic believes that COMPR.AR is a reasonably complete centralized source of information about commercial transactions with Argentine counterparties.  Ex. C (Oct. 31, 2025 Ltr. from A. Davidoff to S. Levine), at 2.  This system serves as a public repository for all contracts (i) between the Central Administration and private individuals and/or legal entities and (ii) between government departments (*i.e.*, "inter-administrative" contracts).  Information that can be found on this system includes:  contracts for the sale of goods, supply contracts, service agreements, rental agreements, consultancy agreements, lease-purchase agreements, swap agreements, concession agreements for the use of property owned by the Republic (whether held for public or private use), and public works contracts.

Likewise, regarding debts, the Republic directed Plaintiffs to publicly available national debt reports.

In addition, the Republic identified five centralized sources that could potentially contain information regarding movable assets in Argentina and produced the information available on those systems.

Finally, after searching for letters of credit and escrow accounts, the Republic did not identify responsive information.  As the Republic has explained, neither instrument is commonly used in Argentina, making the lack of responsive information unsurprising.  *See* Dec. 8, 2025 Joint Status Report at 7.

On top of this, in addition to searching centralized sources, the Republic asked the Ministry of Economy to ask each of its secretariats to conduct a reasonable search for documents sufficient to identify debts, letters of credit, or escrow accounts, regardless of whether such information was maintained in a centralized database or other formal recordkeeping system.  To date, six secretariats have responded that they identified no potentially relevant documents.  One secretariat has identified potentially relevant documents, which the Republic is reviewing and will produce to the extent they are responsive.  The Republic anticipates receiving responses from seven additional secretariats and will notify Plaintiffs promptly thereafter.

In summary, the Republic conducted a comprehensive search in centralized sources for documents responsive to Plaintiffs' requests for the Republic's debts, commercial transactions, letters of credit, escrow accounts, and movable assets in Argentina worth more than $1 million.  The Republic has described those searches

Hon. Loretta A. Preska
January 27, 2026
Page 13

to Plaintiffs in correspondence and produced the responsive materials it identified or provided Plaintiffs with instructions for accessing responsive public information regarding its commercial transactions and debts. Further ministry-by-ministry searches are not needed.

Plaintiffs' request for a Rule 30(b)(6)-style deposition to inquire as to the documents produced and the scope and methodology of the Republic's searches has no legitimate purpose in light of the extensive information the Republic has already provided about its search process though counsel during the course of thirteen meet and confers and seventeen letters. *See, e.g.*, Ex. D (Aug. 18, 2025 Ltr. from A. Davidoff to S. Levine) (providing interim update on search and contents of the COMPR.AR database); Ex. E (Nov. 7, 2025 Ltr. from A. Davidoff to S. Levine) (explaining the contents and scope of information that can be found on the CONTRAT.AR database). The Republic has already explained the scope and nature of its searches in its detailed correspondence and has expended thousands of hours of the time of dozens of government officials to complete.

Plaintiffs' request for more "discovery on discovery" is also cumulative of depositions that have already been completed. Plaintiffs have deposed six Rule 30(b)(6) witnesses, including as to the Republic's collection efforts. For example, Mario Javier Agustín Oyarzábal, Director General of International Legal Counsel of the Ministry of Foreign Affairs, International Trade and Worship,[7] testified that his office submitted a series of specific questions from PTN regarding real estate, moveable assets, and bank accounts to an undersecretariat responsible for administrative matters, which then used multiple databases to identify responsive information. *See* Oyarzábal Tr. 47:11-54:7. The fact that Plaintiffs have "skepticism" is not a reason for additional "discovery on discovery." Such discovery requires "an adequate factual basis," a standard that Plaintiffs have not met. *Mortgage Resolution Serv., LLC* v. *JPMorgan Chase Bank*, 2016 WL 3906712, at *7–*8 (S.D.N.Y. July 14, 2016) (Francis, M.J.) (denying plaintiffs' request for Rule 30(b)(6) deposition).[8]

---

[7] The Republic designated Mr. Oyarzábal to testify concerning Argentina's legal or beneficial interests in any asset in the United States or any Foreign Country, and the search for such assets in response to Plaintiffs' discovery requests.

[8] *See also Kaye* v. *New York City Health and Hospitals Corp.*, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020) (Cott, M.J.) ("When documents are produced in discovery, whether they be produced electronically or otherwise, the Court does not

Hon. Loretta A. Preska
January 27, 2026
Page 14

Plaintiffs' further demand that the Republic conduct additional searches across seven *additional* ministries, secretariats, and undersecretariats is groundless and unnecessary. As explained above, the Republic has already conducted broad searches of dozens of ministries and across numerous centralized databases common to the Argentine National Public Administration, meaning that searches across these seven additional ministries, secretariats, and undersecretariats would very likely be duplicative. Requiring such redundant searches would impose substantial burden on the Republic for no corresponding benefit. Such discovery should not be ordered where, as here, the request is based solely on Plaintiffs' speculation: "Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Freedman* v. *Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (citation omitted); Fed. R. Civ. P. 26(b)(1).

### D. Individuals with Knowledge – Information Subpoena Question 31 (JSR at 25-28)

**<u>Plaintiffs' Position</u>:**

Pursuant to the Court's order, the Republic designated seven witnesses—one per topic. *See* Nov. 4 Tr. at 27:25-28:2. To date, Plaintiffs have conducted remote depositions of the Republic's designees on six topics: (i) gold reserves; (ii) financial agreements with China; (iii) concessions and similar agreements; (iv) legal and beneficial interests; (v) commercial transactions; and (vi) law firm payments. *See* Dkt. 808-7. Plaintiffs met and conferred with the Republic before each deposition following the December 9, 2025 conference. Continuing the Republic's pattern of discovery conduct aimed at evading enforcement of the judgment, each of the six designees was inadequate and unprepared to testify regarding both the scope and methods of the Republic's searches and the substantive topics for which they were designated. *See, e.g.,* Dkt. 842 at 8-9; Dec. 9 Tr. at 34:2-25. This failure to properly designate and prepare Rule 30(b)(6)-style witnesses violates the Republic's discovery obligations. The Republic attempts to demonstrate compliance by

---

believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process."); *Winfield* v. *City of New York*, 2018 WL 840085, at *5-6 (S.D.N.Y. Feb. 12, 2018) (Parker, M.J) (describing that a requesting party's onus to specify a Rule 30(b)(6) topic with "reasonable particularity" is heightened for topics regarding "discovery on discovery").

Hon. Loretta A. Preska
January 27, 2026
Page 15

pointing to the time its witnesses spent preparing and sitting for depositions. The adequacy of preparation is measured by the substance of the testimony, not by the number of hours expended. Witnesses who repeatedly cannot answer basic questions about their designated topics are, by definition, not adequately prepared.

These depositions have also underscored substantial and continuing deficiencies and gaps in the Republic's document searches and productions. As Plaintiffs consistently noted on the record during and at the conclusion of the depositions, the Republic failed to conduct meaningful searches and to produce plainly relevant materials. Those deficiencies cannot be cured by attempting, after the fact, to shift responsibility to Plaintiffs to identify missing documents "in writing" that should have been produced in the first instance. The burden to identify and produce responsive materials rests with the Republic. It cannot evade that obligation by suggesting that Plaintiffs must first divine what documents exist before they are entitled to discovery. In any event, these gaps and missing documents are apparent from the witnesses' own testimony and were expressly flagged during the depositions. The Republic's insinuation that it is unaware of these deficiencies is nothing more than obfuscation and delay.

Plaintiffs' deposition of the Republic's designee on financial agreements with China, Mr. Matias Mana, provides a clear example of the Republic's continued practice of engaging in endless games to avoid complete production of relevant information. The Republic produced only four financial agreements with China—when it was quite clear that there are a wide range of other financial agreements that were not produced—and designated a witness who confirmed that it had interpreted Plaintiffs' requests under an unduly cramped definition of "financial agreements" limited to specific project financing contracts and excluding numerous agreements pertaining to exports and other economic activity.[9] *See* Dkt. 842 at 8; Dec. 9 Tr. at 33:21-36:11. The Republic now attempts to fault Plaintiffs for not sending a follow-up letter concerning the agreements missing from the production—agreements the Republic should have identified and produced years ago and that were specifically flagged by Plaintiffs as missing during the deposition. That argument is misplaced and does not cure its own discovery failures, particularly given that Plaintiffs have

---

[9] On January 23, 2026, after receiving Plaintiffs' first draft of this joint letter on January 20, 2026, the Republic made a limited production of additional agreements pertaining to exports and other financial activity, although the scope and completeness of that production remain unclear.

Hon. Loretta A. Preska
January 27, 2026
Page 16

conferred with the Republic and repeatedly requested that all relevant agreements be produced.

      Nor has the Republic produced any documents concerning the currency swap agreement with China. *See, e.g.*, ECF No. 737-3 at 7. As the Court has already observed, the Republic's claims that it cannot access the swap agreement are baseless, particularly in light of the Republic's extensive public statements concerning decision-making around the swap and the designee's testimony regarding the involvement of Republic officials with the same. *See* Dec. 9 Tr. at 49:23-25 ("THE COURT: . . . [T]he proposition that the Republic doesn't have access to a document signed on its behalf sounds ludicrous."); *see also id.* at 35:5-25, 50:10-21. Moreover, the Republic's apparent December 26, 2025 request to the BCRA for the agreement—more than two weeks after the Court's December 9, 2025 order, *see id.* at 51:3-6—further reflects its continuing pattern of delay. As noted in its portion of the joint letter, the Republic informed Plaintiffs on January 27, 2026 that the BCRA had "declined to provide a copy of the agreement." If the Republic persists in asserting lack of access—despite offering no competent evidentiary basis for that claim—the Court should hold a hearing on the issue.

      Plaintiffs nevertheless have attempted in good faith to meet and confer with the Republic regarding these deficiencies, both with respect to the China deposition and the remainder of the topics. Despite raising these issues on the record and seeking to address them informally, Plaintiffs' efforts have been met with continued resistance. For example, on January 23, 2026, Plaintiffs sought to confer with the Republic regarding gaps—previously identified on the record during the relevant depositions—in the concessions and commercial transactions document production, but the Republic refused to engage unless and until Plaintiffs first sent a written list of deficiencies and repeatedly sought to end the call. The Republic's insistence on serial letter-writing reflects its broader strategy of delay. Rather than remedying obvious gaps revealed by its own witnesses' testimony, the Republic has sought to impose additional hurdles in an effort to defer its discovery obligations.

      To date, Plaintiffs have sought judicial intervention only when further efforts to confer would be futile. Accordingly, Plaintiffs filed a pre-motion letter arising from the Republic's failure to produce a qualified Rule 30(b)(6)-style witness regarding Argentina's gold reserves following a meet and confer in which the Republic made it clear that it would not provide the sworn statement Plaintiffs sought. Dkt. 858. With respect to the remaining deposition topics other than the

Hon. Loretta A. Preska
January 27, 2026
Page 17

Republic's gold reserves and China, Plaintiffs will continue to attempt to confer with the Republic regarding the deficiencies and gaps in the Republic's productions in light of the witnesses' testimony (although Plaintiffs are concerned doing so will be of limited utility), and, where necessary, will file pre-motion letters to compel the production of adequate 30(b)(6)-style witnesses and responsive documents.

**Republic's Position:**

The Republic's six witnesses were more than adequately prepared for their depositions. Plaintiffs' complaints that they were not able to testify about information "known or reasonably available to" the Republic on their designated topics, as required by Rule 30(b)(6), are baseless.[10] The Republic undertook extensive efforts to prepare each witness—who together provided approximately 30 hours of testimony—only for Plaintiffs to largely ignore the substantive issues as to which the witnesses were designated in favor of efforts to play "gotcha" and gin up discovery disputes.

For example, Plaintiffs did not show Matías Mana, Undersecretary of International Financial Relations, a single financing agreement, nor did they show Mariano Palacios, Advisor to the Secretary of Energy, a single concession agreement, despite their being the designated witnesses for those topics, respectively.

Moreover, all six witnesses provided complete testimony as to the searches conducted. For example, Mr. Mana provided clear testimony as to what he searched and with whom he spoke about documents cited in his deposition. *See* Dec. 9, 2025 Hr'g Tr. at 36:16-39:15.

And to the extent that witnesses were unable to answer certain questions regarding individual issues, that is because Plaintiffs refused to share the information they would be seeking at the deposition in advance so that the witness could be prepared to address those issues. On September 10, 2025, the Republic responded to Plaintiffs' "preliminary list" of seven topics for which they sought deposition

---

[10] Plaintiffs' complaint that the Republic "failed to conduct meaningful searches" is likewise ludicrous. As explained above, the Republic's searches were exhaustive. The Republic informed Plaintiffs of the process by which these searches were undertaken at every step, and only now do they claim those efforts were not "meaningful."

Hon. Loretta A. Preska
January 27, 2026
Page 18

testimony, requesting that Plaintiffs identify what additional information they hoped to obtain on those topics.  Sept. 10, 2025 Ltr. from A. Davidoff.  Plaintiffs refused. Then, on December 9, 2025, the Court ordered the Plaintiffs to meet and confer with the Republic regarding what information Plaintiffs wanted to get from these depositions precisely to avoid the gamesmanship Plaintiffs have engaged in.  *See* Dec. 9, 2025 Hr'g Tr. at 51:17-52:12 ("THE COURT:  It would be helpful if you perceive gaps, Mr. Levine, to let counsel know in advance. . . .  [I]f you perceive a gap, why not let counsel know?").  Although the parties met and conferred before each deposition since the December 9 conference, at none of those conferences did Plaintiffs provide *any* specific gaps, instead merely stating that they were interpreting their 30(b)(6) topics in the broadest possible terms and that the Republic's witnesses should be prepared accordingly.

In addition, the Republic has repeatedly offered to review any purported gaps and to provide more information or documents, if needed.  Dec. 8, 2025 Joint Status Report at 7 ("If Plaintiffs believe that particular categories of responsive documents have been missed, they should write a letter or pick up the phone."); *see* Dec. 9, 2025 Hr'g Tr. at 39:4-15.  Plaintiffs' counsel even represented to the Court on December 9 that they would send a letter to the Republic on missing documents arising out of the Mana deposition.  Dec. 9, 2025 Hr'g Tr. at 40:7-8.  Four more depositions have taken place since then.[11]    Still, despite continued requests by the Republic—including on December 10, 2025 and January 9, immediately after the latest deposition on January 8—Plaintiffs have yet to identify in writing or by phone the specific information on which they would like the Republic to follow up.  Instead, Plaintiffs said in an earlier draft of this letter dated January 20 that they "intend to confer with the Republic and, as necessary, file pre-motion letters seeking to compel" at some point in the future, with no regard to their own obligations.  The very next day, Plaintiffs filed a pre-motion letter alleging deficiencies in the January 8 deposition testimony, after a pointless ten-minute meet and confer session on which they said that no further searches by the Republic would prevent them from filing their motion.[12]

Then, on January 23 at 3:00 PM, Plaintiffs asked for a meet and confer to discuss this joint status report.  Rather than discussing this report, a new lawyer for Plaintiffs took the opportunity to identify purported deficiencies in testimony that

---

[11]    Three were held December 12, 2025; one was held January 8.  A seventh is scheduled for February 12.

[12]    *Petersen* ECF No. 858 (Jan. 21, 2026).

Hon. Loretta A. Preska
January 27, 2026
Page 19

took place nearly eight weeks ago by reading a list of questions that Plaintiffs say the witnesses did not know the answers to, including, for example, matters like how PTN determined where to look for potentially relevant documents—questions Plaintiffs could have asked weeks ago. The Republic asked that Plaintiffs put these claimed deficiencies in writing, which Plaintiffs have yet to do.

As the Republic has stated, it is willing to work with Plaintiffs to get them the information they are entitled to which was not addressed during the 30(b)(6) testimony. But, of course, obtaining this additional information—things like the names of individuals at various secretariats who searched databases for assets—is not Plaintiffs' real goal—it is continued motion practice and hearings to put pressure on the Republic.

The Court should order Plaintiffs to identify in writing all follow up questions arising out of these depositions in order to avoid further burdening the Republic and the Court with vague threats of future motion practice.

With respect to the Republic's financial agreements with China, the Republic produced on January 23 additional responsive documents. The Republic notes that many of the agreements that Plaintiffs raise are generally public and available online. Regarding the currency swap agreement, specifically, the Republic has made clear that agreement was between BCRA and the Central Bank of China and is in the possession of BCRA; it is not accessible to the Republic. *See Petersen* ECF No. 842 at 11-12; Dec. 9, 2025 Hr'g Tr. at 45:24-46:10; 48:21-49:22. On December 26, 2025, the Republic requested BCRA to share a copy of the agreement pursuant to the Court's order on December 9. *See* Dec. 9, 2025 Hr'g Tr. at 40:23. BCRA declined to provide a copy of the agreement, citing concerns that its production would have implications for the bilateral relationship between the two central banks.

Hon. Loretta A. Preska
January 27, 2026
Page 20

Respectfully Submitted,

/s/ Seth L. Levine
Seth L. Levine
Alison M. Bonelli
Julie-Irene A. Nkodo
Adam M. King

LEVINE LEE LLP
400 Madison Avenue
New York, New York 10017
Telephone: (212) 257-4400
slevine@levinelee.com
abonelli@levinelee.com
jnkodo@levinelee.com
aking@levinelee.com

KING & SPALDING LLP
Laura Harris
1185 Avenue of the Americas
New York, NY 10036
Phone: (212) 556-2100
Fax: (212) 556-2222
Email: lharris@kslaw.com

-and-

Reginald R. Smith
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Phone: (713) 751-3200
Email: rsmith@kslaw.com

KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.

/s/ Robert J. Giuffra Jr.
Robert J. Giuffra Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Adam R. Brebner

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:  (212) 558-4000
Facsimile:    (212) 558-3588
giuffrar@sullcrom.com
galviss@sullcrom.com
davidoffa@sullcrom.com
whitet@sullcrom.com
brebnera@sullcrom.com

*Counsel for the Argentine Republic*

Hon. Loretta A. Preska
January 27, 2026
Page 21

Andrew E. Goldsmith
Alejandra Ávila
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
agoldsmith@kellogghansen.com
aavila@kellogghansen.com

*Counsel for Plaintiffs Petersen Energía
Inversora, S.A.U., Petersen Energía, S.A.U.,
Eton Park Capital Management, L.P., Eton
Park Master Fund, Ltd., and Eton Park Fund, L.P.*