# EXHIBIT C

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-956-7676
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 31, 2025

Via E-mail

Seth L. Levine,
   Levine Lee LLP
      400 Madison Avenue,
         New York, NY 10017.

         Re:   *Petersen Energía Inversora S.A.U.* v. *Argentine Republic*,
              No. 15-cv-2739 (S.D.N.Y.)
              *Eton Park Capital Management, L.P.* v. *Argentine Republic*,
              No. 16-cv-8569 (S.D.N.Y.)

Dear Seth:

      On behalf of the Argentine Republic, I respond to your October 6, 2025 letter ("Letter") regarding certain outstanding discovery.

## I.    Requests Regarding Certain Assets in Argentina

      The Republic can confirm that all of the agreed-upon ministries, secretariats, and undersecretariats have now responded to the Republic's requests for information concerning centralized databases or other sources of information that contain or may contain information responsive to Plaintiffs' discovery requests. These additional responses have resulted in the identification of several additional centralized databases that may contain responsive information.

      <u>Debts</u>. In addition to *Sistema Integrado de Información Financiera Internet* ("e-SIDIF"), the Republic's inquiries have identified two systems maintained by the Secretariat of Public Works of the Ministry of Economy—the *Sistema de Gestión de Obras* ("SGO") and its successor, the *Sistema Único de Gestión de Obras Públicas* ("SUGOP")—as sources of information regarding (i) debts owed to the Republic by persons in Argentina (First RFPs 38, Second RFPs 7, 29, 31, 40, 48; Subpoena Question 10) and (ii) debts owed by the Republic to persons in Argentina (First RFPs 37; Second RFPs 8, 40, 49, 52;

Seth L. Levine                                                                                                          -2-

Subpoena Question 11).  These systems contain information concerning obligations arising from public works contracts (*e.g.*, payment orders, work certificates, or price adjustments).  SGO was the original platform for recording and managing technical, administrative, and financial data on public works and remains in use for historical records, while SUGOP is being adopted as a unified system, with expanded fields and centralized management.  Pursuant to Resolution 7/2025, SUGOP must include for each project detailed records such as budgets, work plans, contracts, certifications, payment orders, price adjustments, inspection reports, and related case files.  Within these systems, SGO houses databases for bidding processes ("SNOP.Bidding"), pre-investment records ("SNOP.GEP"), and project monitoring ("SNOP.SIPPE"); SUGOP contains the SUGOP.GO database, which centralizes the administrative, technical, and financial information for ongoing projects.

Accordingly, the Republic has requested that the relevant secretariat within the Ministry of Economy conduct searches of the SGO and SUGOP databases to identify information on debts of US$1 million or more owed to the Republic by persons in Argentina or by persons in Argentina to the Republic in response to the above-referenced discovery requests.  We have asked that the relevant secretariats provide this information by November 5, 2025.

Commercial Transactions with Argentine Counterparties.  As previously stated, the Republic believes that COMPR.AR is a reasonably complete centralized source of information about commercial transactions with Argentine counterparties (Subpoena Question 10).  In addition to COMPR.AR, the Republic's inquiries have also identified the ComprasDOS platform as another potential source of information regarding commercial transactions between the Federal Penitentiary Service (*Servicio Penitenciario Federal*) and Argentine counterparties.  The system is maintained by the Directorate of Health Insurance of the National Directorate of the Federal Penitentiary Service at the Ministry of National Security.

Accordingly, the Republic has requested that the Ministry of National Security conduct searches of the ComprasDOS database to identify information on commercial transactions with Argentine counterparties valued above US$1 million in response to the above-referenced discovery requests.  We have asked that said ministry provide this information by November 5, 2025.

Letters of Credit Issued by Argentine Financial Institutions. The Republic informed Plaintiffs that it would review the information available on e-SIDIF to determine whether it is an appropriate data source for letters of credit issued by Argentine financial institutions in which the Republic is listed as the applicant or beneficiary (Second RFPs 10; Subpoena Question 17).  Having completed that review, the Republic has determined that e-SIDIF does not contain information regarding letters of credit.

Seth L. Levine                                                                                                                         -3-

        The Ministry of National Security has more recently identified the *Sistema de Control Interno de Garantías*, which may contain information regarding letters of credit issued by Argentine financial institutions in which the Republic is listed as the applicant or beneficiary. This system records information on guarantees withheld for tenders, insurance, and other related items. Moreover, as stated in our August 29, 2025 letter, SWIFT messages pertaining to letters of credit may also be an appropriate source of information regarding letters of credit issued by Argentine financial institutions.

        The Republic has requested that the relevant ministry conduct searches of the *Sistema de Control Intero de Garantías* to identify information about letters of credit issued by Argentina financial institutions for any amount of money. We have asked that the relevant ministries provide this information by November 5, 2025.

        <u>Movable Assets in Argentina</u>. The Republic previously identified the *Sistema de Gestión de Bienes* ("GEBI") as a database that is likely to contain information on movable assets in Argentina and legal and beneficial interests therein (Second RFPs 3, 4). In addition to the GEBI system, the Republic's inquiries have identified the *Sistema Integrado de la Policia Federal Argentina* ("SIPFA Web"), *Sistema de Gestión Logistica* ("SGL"), *Gestión de Bienes Patrimoniales* ("GEBIPA") as additional appropriate centralized sources of information about movable assets that are owned by the Ministry of National Security. The Argentine Federal Police (*Policía Federal Argentina*), the National Gendarmerie (*Gendarmería Nacional Argentina*), and the Naval Prefecture (*Prefectura Naval Argentina*), respectively, maintain these internal systems that track and manage their movable assets in Argentina. These systems record information such as asset type, location, registration, value, and disposition, and serve comparable functions across the institutions. The Republic has also identified the *Sistema Integrado de Información Patrimonial* ("SIDIP") as a potential source of information about movable assets that are owned by the Argentine Air Force General Staff (*Estado Mayor de la Fuerza Áerea Argentina*).

        Accordingly, the Republic has requested that the relevant ministries conduct searches of the SIPFA Web, SGL, GEBIPA, and SIDIP systems to identify information on movable assets in Argentina valued above US$1 million. We have asked that the relevant ministries provide this information by November 5, 2025.

*     *     *

        The Republic is continuing to confer with the relevant ministries both regarding the searches that have been conducted to date of the e-SIDIF, GAF-CAN, UEPEX, and GEBI databases and to explore any additional data sources other than those the Republic has already identified that may contain information responsive to Plaintiffs'

Seth L. Levine                                                                                                                  -4-

discovery requests.  We anticipate beginning production of responsive documents by November 3, 2025.

    The Republic remains willing to consider Plaintiffs' proposal that seven more entities be added to the parties' agreed-upon list of over 100 ministries, secretariats, and undersecretariats to be searched.  However, in order to prioritize the completion of the extensive searches to which the parties have already agreed, the Republic proposes that the parties defer this question at least until after the Republic begins its productions.

**II. Non-Government ESI and Internal Communications for "Alter-Ego" Discovery**

    The Republic agrees to all of Plaintiffs' proposed additional custodians with the exception of Mariela Beljansky (as to YPF), Antonio Milanese (as to YPF), Guillermo Alberto Francos (as to BCRA, AA, BNA, and ENARSA), and Diego Aduriz (as to YPF and ENARSA).

    As you know, Judge Preska has already denied Plaintiffs' proposal to include Ms. Beljansky as a custodian for alter-ego discovery as to YPF, rejecting Plaintiffs' argument that her position as Undersecretary for Energy Planning (now known as the Undersecretary for Transition and Energy Planning) alone renders her relevant to the alter-ego inquiry.  (*See* Sept. 3, 2024 Conf. Tr. at 17:4-12, 44:5.)  Plaintiffs have not identified any new information supporting a "reasonable inference" that Ms. Beljansky possesses internal communications evidencing interactions with YPF and therefore she is simply "not relevant to whether the Republic exerted day-to-day control over the compan[y]." (July 29, 2025 Conf. Tr. at 47:6-12, 60:22.)  Likewise, Plaintiffs have presented no new evidence regarding Ms. Beljansky's successor, Mr. Milanese, that would warrant revisiting the Court's prior conclusion.

    In addition, while Mr. Francos is a current member of YPF's Board of Directors, he holds no similar role with respect to BCRA, AA, BNA, and ENARSA and is therefore unlikely to have "day-to-day" interactions with these entities.

    Finally, as an advisor to the current Minister of Economy, Mr. Aduriz is unlikely to have "day-to-day" interactions with YPF or ENARSA.  He is not a government official and serves only as a consultant.

    The Republic is still considering Plaintiffs' proposed search terms, which were provided on October 1, 2025, eight weeks after the Court directed Plaintiffs to do so. (*See* Aug. 6, 2025 Conf. Tr. at 29:22-30:1.)  We note that Plaintiffs labeled them as "preliminary."  For the avoidance of doubt, the search terms must be final and agreed before searches are conducted, as the Republic will not engage in multiple rounds of custodial searches.

Seth L. Levine                                                                                                       -5-

### III.    Identification of Accounts

As the Republic has previously explained, the account lists that the Republic has produced identify the owner of each account. While the Republic is willing to identify the specific ministry that owns a particular account on a case-by-case basis—as it did for the accounts for which "Argentine Embassy Defence" is listed as the account holder in AR00161243—conducting this exercise for each of the over one thousand accounts in the Republic's production is unnecessary given that the account names are generally clear on their face (*e.g.*, "Alemania Federal, Emb.," "Agregaduria de Defensa"). The Republic remains willing to provide official ministry names for a reasonable number of accounts whose names Plaintiffs contend are unclear.

BNA account #85100000166409 is in fact included in the Republic's previously produced account lists. It is located in AR00189926 at -53 (Account No. 1664/09). We believe that the Republic's production of account lists is complete. However, in the event the Republic becomes aware of accounts that were inadvertently excluded from its productions, the Republic will promptly disclose those accounts to Plaintiffs—as it has in the past.[1]

Finally, regarding your request that the Republic's account lists be re-produced in text-searchable form, the Republic agrees to reproduce the account lists.

### IV.    Account Ownership

The Republic has now responded in full to Information Subpoena Questions 15 and 18. As to the questions raised in your Letter:

*First*, as explained during the parties' meet and confer on August 29, 2025, the Republic has already provided Plaintiffs with substantial information regarding its search for information regarding the Republic's financial agreements with China (Question 15). Most recently, the Republic detailed its search process in response to Plaintiffs' request that the Republic identify a Rule 30(b)(6)-style person to provide information regarding "Argentina's financial agreements between China (as defined in Plaintiffs' RFPs) and Argentina." (*See* Sept. 10, 2025 Ltr. from A. Davidoff at 9-10.) The Republic's September 10, 2025 letter also makes reference to numerous other letters that the Republic has sent to Plaintiffs over the past several years on this topic. (*See id.*) As

---

[1] Upon further review, the Republic has identified an account that was inadvertently omitted from its prior productions. The Republic therefore supplements its prior responses to include an account held by La Maison de L'Argentine within the Ministry of Education (Account No. 00034198301) at CIC Paris Anjou Iberbanco, 6 Rue d'Anjou, 75008 Paris, France. The Republic has requested the SWIFT messages associated with this account.

Seth L. Levine                                                                                                    -6-

the Republic explained well over a year ago, "[t]o search for responsive documents, we consulted with the Undersecretariat of International Financial Relationships, the entity responsible for foreign trade and investment." (Apr. 15, 2024 Ltr. from A. Davidoff at 4.) In terms of scope, the Republic explained, "[t]hese Requests are not limited by any value threshold, nor is our response." (*Id.* at 3.) The Republic identified the accounts used for the four agreements the Republic has been involved in with China since January 1, 2020 on October 31, 2025. (*See* Oct. 31, 2025 Ltr. from A. Davidoff at 2-3.)

*Second*, as explained in the Republic's October 31 letter, all payments to law and consulting firms outside of Argentina (Question 18) are made through accounts owned by the Treasury Secretariat at Banco de la Nación and Banco Central de la República Argentina. (*See id.* at 3-4.)

*Third*, the parties have spent months discussing the searches currently underway to identify information regarding six categories of assets held by the Republic in Argentina. One of those assets is "escrow accounts in Argentina (First RFPs 27, 28; Second RFPs 12, 13)." For additional information regarding "the scope and parameters of the search that the Republic intends to conduct" to identify escrow accounts (Question 19), please refer to our voluminous correspondence on this subject.

### V.    Commercial Transactions

Nothing in the Letter suggests that COMPR.AR "does not provide a complete response to Question 16." The Letter states that "very few public concession contracts" are listed on COMPR.AR, but Question 16 asks the Republic to "[l]ist all Commercial Transactions between Argentina and any Person" and the definition of "Commercial Transactions" in the Information Subpoena does not include concession contracts. Instead, Question *20* asks the Republic to "[l]ist any concession agreement or similar agreement." As detailed in its September 10, 2025 letter, the Republic has already produced documentation of the Republic's offshore drilling concessions, energy concessions, and offshore exploration concessions. (*See* Sept. 10, 2025 Ltr. from A. Davidoff at 10.)

Nevertheless, the Republic has requested that the National Office of Procurement provide a description of the contents of the CONTRAT.AR database, as it did with respect to COMPR.AR. The National Office of Procurement provided this description on October 28, 2025, which the Republic is reviewing.

### VI.    SWIFT Messages

The Republic has provided Plaintiffs with SWIFT messages in the format in which the Republic received them from financial institutions, and the Republic "need

Seth L. Levine                                                                                                          -7-

not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii).  Further, as the Republic informed Plaintiffs before making any requests, to collect SWIFT messages, the Republic had to direct each ministry and secretariat that owns a financial account to request SWIFT messages from the financial institution at which each account is held—a process that took months for SWIFTs from the Republic's non-Argentine accounts and is already well underway for SWIFTs from the Republic's Argentine accounts.  Plaintiffs did not make any formatting requests at the outset of this process.  That Plaintiffs find the SWIFT messages "difficult to read" does not justify undertaking the substantial burden of duplicating this process.

### VII.    U.S. and Foreign Movable Assets

The Republic has confirmed that the Ministry of Foreign Affairs, International Trade and Worship does not own any movable assets in the United States—either within the Republic's Embassy and Consulates or otherwise—whose valuation is equal to or greater than US$1 million.  The Ministry has further completed its search for foreign movable assets (outside of the United States) valued at equal to or greater than US$1 million, and has identified no such assets.

*      *      *

We are available to confer on these matters.

Sincerely,

*/s/ Amanda Flug Davidoff*
Amanda Flug Davidoff